**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

CHARLES MICHAEL HALL,

        Petitioner,

        v.

UNITED STATES OF AMERICA,

        Respondent**.**

Civil No.  21-08001-CV-S-BCW
Crim. No. 10-03029-02-CR-S-BCW

**GOVERNMENT'S RESPONSE AND SUGGESTIONS IN OPPOSITION**
**TO PETITIONER'S MOTION FOR PERMISSION TO CONTACT JURORS**

The respondent, the United States of America, respectfully requests that this Court deny the motion for permission to contact jurors, filed by the petitioner, Charles Michael Hall. (Civ. D.E. 39.)  The Government provides the following suggestions in opposition to Hall's motion:

## I. <u>Summary</u>

Following a jury trial, Hall and co-defendant Wesley Coonce were convicted of first-degree murder.  The jury unanimously recommended that Coonce and Hall be sentenced to death, and this Court imposed that sentence.

Hall has now filed a motion requesting permission to contact and interview jurors to prepare for the filing of his initial petition under 28 U.S.C. § 2255.  For the reasons set forth below, this Court should deny the motion.

## II. Procedural History

On July 19, 2011, a federal grand jury returned a superseding indictment charging Hall with first-degree murder, in violation of 18 U.S.C. § 1111. (D.E. 59.) On July 22, 2011, the government filed a notice of intent to seek the death penalty against both Coonce and Hall. (D.E. 62.)[1]

Coonce and Hall proceeded to a joint jury trial, which began on April 28, 2014. After seven days, the jury found both Coonce and Hall guilty on all counts charged. (D.E. 757.)

On May 23, 2014, and in response to an anti-death penalty protest outside the courthouse, this Court entered an order stating:

> Pursuant to the events that transpired on May 23, 2014, it is ORDERED that no attorney for the Defendants or anyone working with the attorneys in this case is to reveal the names and/or any contact information of any juror, and further that the attorneys in this case are to advise everyone working with them of the above directive, and lastly that no one is to contact any of the jurors after they are discharged without the Court's permission to do so.

(D.E. 788.)

After the penalty phase, the jury unanimously returned verdicts of death against both Coonce and Hall on June 2, 2014. (D.E. 810-811.)

On July 3, 2014, the Government filed a motion for order prohibiting contact with jurors. (D.E. 883.) Within the motion, the Government recited the Court's report that the jury expressed their desire not to discuss the specifics of the case with counsel for the

---

[1]"D.E. refers to the docket entries in Hall's underlying criminal case, No. 10-03029-02-CR-S-BCW. "Civ. D.E." refers to the docket entries in Hall's civil case, No. 21-08001-CV-S-BCW.

government or the defense and that there was no instance or indication of juror misconduct. (D.E. 883.) This Court found the motion moot, given its previously imposed order. (D.E. 884.)

On appeal Hall raised 14 arguments claiming an instructional error for returning a death sentence, the court's refusal to accept the jury's inability to reach a unanimous verdict and instructing the jury to continue deliberating, the jury failed to give Hall consideration of proven mitigating factors, an unlawful restriction on cross-examining Dr. Park Dietz, refusal of proportionality mitigating factor, constitutionality of future dangerousness as an aggravating factor, future dangerousness as a non-statutory aggravating factor violated the Federal Death Penalty Act, improper information to support future dangerousness factor, failure to grant severance of defendants, refusal to exclude details of plea bargaining, reliance on invalid heinousness aggravator, refusal to strike invalid grave indifference aggravating factor, whether duplication of lack of remorse aggravator amounts to a constitutional violation, and reversal of death sentence in light of cumulative error. *United States v. Hall*, 945 F.3d 1035 (8th Cir. 2019.) The Eighth Circuit addressed each of Hall's arguments, upheld the verdict, and affirmed Hall's conviction and sentence. *Id.* Hall's request for panel rehearing and rehearing en banc was denied on March 17, 2020.

On August 28, 2020, Hall filed for a writ of certiorari, which was denied on March 22, 2021. *Hall v. United States*, 141 S. Ct. 1694 (2021).

Although Hall has not filed a motion under 28 U.S.C. § 2255, the Government has agreed to a waiver of the statute of limitations for Hall to file his motion on or before June 23, 2023. (Civ. D.E. 30.)

On April 10, 2023, Hall filed the instant motion requesting permission to contact and interview the jurors and alternate jurors who served at his trial. (Civ. D.E. 39.)  The Government's response follows.

### III.  Argument and Authorities

Hall requests permission to contact all jurors and alternate jurors who served at his trial to investigate potential claims for his § 2255 petition that he has yet to file.  (Civ. D.E. 39.)  In requesting relief, Hall asserts two claims:  first, the jurors potentially made a mistake in filling out the penalty phase verdict form; and second, the jury's change to reaching a unanimous death verdict suggested that there was outside influence.  (Civ. D.E. 39-1.)

Hall's motion should be denied because his case is closed and he does not have a pending motion before this Court; a habeas petitioner is not entitled to discovery; no good cause exists because Hall has not provided any basis for finding misconduct, irregularity, or outside intrusion into the jury process; Hall's specific claims were already decided on direct appeal, and Hall may not relitigate those claims in a § 2255 motion; and Hall should not be granted post-trial juror interviews based on purely speculative grounds.

### A.  *Hall's Criminal Case Is Closed, and He Has Not Demonstrated Good Cause*

The rules governing collateral review of federal convictions permit discovery, but only upon a showing of good cause.  18 U.S.C. § 2255, Rule 6.  Good cause exists when the defendant's § 2255 petition establishes a prima facie case for relief.  *Harris v. Nelson*, 394 U.S. 286 (1969); *accord Bracy v. Gramley*, 520 U.S. 899 (1997).  In other words, a good cause finding will lie "where specific allegations before the court show reason to

believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09; *see also United States v. Roane*, 378 F.3d at 402-03 (applying this standard in the § 2255 context).

Here, Hall has no pending § 2255 motion before this Court, and his criminal case is closed. "A trial court loses jurisdiction once the defendant's sentence is executed, unless there is a constitutional or legislative grant of authority." *State v. Butler*, 209 Conn. App. 63, 65, 267 A.3d 256, 260 (2021). While Hall asserts that counsel has a duty to fully investigate all issues and claims pertaining to the verdict's constitutionality, such argument has no basis. "The [constitutional] right to counsel does not require that a criminal defense attorney leave no stone unturned and no witness unpursued." *Berryman v. Morton*, 100 F.3d 1089, 1101 (3d Cir. 1996); *see also Thomas v. Gilmore*, 144 F.3d 513, 515 (7th Cir. 1998) ("A reasonable investigation is not . . . the investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources . . . would conduct."). Whatever duty of investigation counsel may have it does not require a complete probing of every imaginable constitutionally-based claim against the judgment.

Hall also has no constitutional right to counsel on collateral review. *See Clay v. Bowersox*, 367 F.3d 993, 1005 (8th Cir. 2004) ("There is no federal constitutional right to the effective assistance of post-conviction counsel."); *United States v. Craycraft*, 167 F.3d 451, 455 (8th Cir. 1999) (finding "no general right to counsel" for § 2255 litigants).

A showing of good cause for discovery springs from the quality of the claim for collateral relief, and no other factor. *See Bracy*, 520 U.S. at 908-09. At this juncture, the Court should not become embroiled in a piecemeal adjudication of discovery issues when

there is no pending motion. Rather, the Court should first consider the viability of Hall's § 2255 claims generally, before determining which of them might require evidentiary expansion. Such an ordered process will avoid the risk that former jurors will be unnecessarily burdened with a superfluous investigation.

**B.**   ***Post-trial Juror Interviews Are Generally Disfavored***

District courts have wide discretion when deciding whether to allow litigants to contact jurors after trial. *United States v. Booker*, 334 F.3d 406, 416 (5th Cir. 2003); *McCabe v. Macaulay*, No. 05–CV–73–LRR, 2008 WL 5070706, at *1 (N.D. Iowa Nov. 25, 2008); 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 606.05[1][C] (2d ed. 1997). Generally, federal courts disfavor post-trial interviews of jurors. *See United States v. Self*, 681 F.3d 190, 199 (3d Cir. 2012); *United States v. McDougal*, 47 F. Supp. 2d 1103, 1104 (E.D. Ark. 1999); Weinstein & Berger, *supra*, § 606.06[1] ("The federal courts are notoriously reluctant to permit either informal post-verdict interviews with or testimony from discharged jurors.").

"Most courts do not allow attorneys to contact jurors after the conclusion of trial." *Olsson v. A.O. Smith Harvestore Prod., Inc.,* 696 F.Supp. 411, 412 (S.D. Ind. 1986). *See also*, *Sixberry v. Buster*, 88 F.R.D. 561, 561-62 (E.D. Pa. 1980) ("It is well settled that the Federal courts strongly disfavor any public or private post-trial inquisition of jurors as to how they reasoned, lest it operate to intimidate, beset and harass them.") (internal quotations and citations omitted). The reasons for this disfavor include protecting jurors from harassment, preserving jurors' freedom of deliberation, preventing jury tampering, and increasing the certainty of verdicts. *Dall v. Coffin*, 970 F.2d 964, 972 (1st Cir. 1992);

-6-

*Wilkerson v. Amco Corp.*, 703 F.2d 184, 85–86 (5th Cir. 1983); Weinstein & Berger, *supra*, § 606.06[1]; *Sioux Falls Kenworth, Inc. v. Isuzu Com. Truck of Am., Inc.*, No. 4:14-CV-04187-RAL, 2016 WL 6804897, at *1 (D.S.D. Nov. 16, 2016).

Courts typically deny a litigant's request to interview jurors' post-verdict absent a threshold showing of an outside intrusion into the jury process. *United States v. Wright*, 506 F.3d 1293, 1303 (10th Cir. 2007) ("This court has held that a trial judge is well within his discretion in denying leave to inquire of jurors where there was no claim of external interference with the process.") Only when there is a showing of illegal or prejudicial intrusion into the jury process will the court sanction such an inquiry. *See McElroy by McElroy by McElroy v. Firestone Tire & Rubber Co.*, 894 F.2d 1504, 1511 (11th Cir. 1990) (holding that denial of post-verdict motion to interview jurors was not an abuse of discretion where moving party did not allege that any prejudicial information or outside influence was brought to bear on the jury); *McCabe*, 2008 WL 5070706, at *2 (denying motion to interview jurors because moving party did not make a preliminary showing that members of the jury either learned of any extraneous prejudicial information or that outside influences were brought to bear upon them); *Allen v. United States*, No. 4:07CV00027 ERW, 2008 WL 80061, at *1 (E.D. Mo. Jan. 4, 2008) (same); *Economou v. Little*, 850 F. Supp. 849, 852 (N.D. Cal. 1994) ("Most federal courts deny requests to conduct post-verdict interviews of jurors unless there is a proper preliminary showing of likely juror misconduct or witness incompetency."); *see also United States v. Eagle*, 539 F.2d 1166, 1170 (8th Cir. 1976) (holding that defendant had no right to subpoena jurors after trial when he had not made "specific allegations that any of them engaged in overt improper

-7-

acts susceptible of proof"). Mere "'fishing expeditions' carried out by losing attorneys interested in casting doubt on the jury's verdict" are not allowed. *J. Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986).

These same reasons form the basis of Federal Rule of Evidence 606(b), which generally precludes the admission of juror testimony to impeach a verdict. Fed. R. Evid. 606(b) advisory committee's note to 1972 proposed rules (explaining that the "values sought to be served" by excluding evidence received for the purpose of invalidating a verdict "include freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment").

Permitting the unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought processes in conflict with Rule 606, and to diminished confidence in jury verdicts as well as unbalanced trial results depending unduly on the relative resources of the party. *United States v. Kepreos*, 759 F.2d 961, 967 (1st Cir. 1985). *See also, Shoen v. Shoen*, 933 F.Supp. 871 (D.Ariz. 1996), *aff'd* 113 F.3d 1242, 1997 WL 243533 (9th Cir. 1997) (Local rule limiting juror contact reflects public policy of allowing jurors to complete their service without concern for future consequences).

**C.** **_Hall Has Not Made a Preliminary Showing of Misconduct, Irregularity, or Outside Intrusion Into the Jury Process_**

No good cause exists for this Court to grant juror interviews because Hall has not provided any basis for finding misconduct, irregularity, or outside intrusion into the jury process. In the absence of a good cause finding that would support judicial permission to interview former jurors, Hall's attorneys have no constitutional duty to speak with the panel members.

1. *Claims Decided on Direct Appeal May Not Be Relitigated Under 28 U.S.C. § 2255*

"It is well-settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981); *Dall v. United States*, 957 F.2d 571, 572 (8th Cir. 1992) (per curiam); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). The law of the case doctrine requires that the decisions by the Eighth Circuit, handed down on direct appeal, remain undisturbed in subsequent proceedings. *Baranski v. United States*, 515 F.3d 857, 861 (8th Cir. 2008).

Hall requests permission to interview jurors alleging that he has shown a potential mistake on the verdict form regarding the mitigating factors that Hall suffered from a medical condition and had no disciplinary violations since the offense. Hall acknowledges that this issue was raised and decided on appeal. (Civ. D.E. 39-1 at 7-8.) Hall, however, claims that the record is incomplete and ambiguous requiring § 2255 counsel to investigate an error of constitutional magnitude. (Civ. D.E. 39-1 at 8.)

The Eighth Circuit held that there was no constitutional error, finding that the jurors were not required to give any weight to Hall's post-murder behavior or medical condition, and that form did not affect the jury's overall decision:

> We agree that the most likely explanation is that some jurors misunderstood the instructions on the verdict form. The form required the foreperson to record "the number of jurors who ... found the existence of [each] mitigating factor to be proven by a preponderance of the evidence," yet she wrote "6" in the space for Hall's medical condition and "0" in the other. Following their discharge, some jurors informed the district court that the foreperson may have recorded the number who voted to give these factors mitigating weight, rather than the number who found that they "had been proved." See Fed. R.

Evid. 606(b)(2)(C) (providing an exception for juror testimony when it involves "a mistake ... in entering the verdict on the verdict form"). Given that the government did not dispute either factor, however, there was no reason for the foreperson to write anything other than "12" for both.

Unlike Hall, however, we are convinced beyond a reasonable doubt that any mistake the jury may have made was harmless. See 18 U.S.C. § 3595(c)(2). As a baseline principle, the jurors were not required to give any mitigating weight to Hall's post-murder good behavior or his medical condition, *see United States v. Paul*, 217 F.3d 989, 999 (8th Cir. 2000), even if he had a right to present them to the jury. Only if the jurors assigned no weight to them because they believed, "as a matter of law," that they were "unable even to consider the evidence" would a constitutional problem arise. *Eddings v. Oklahoma*, 455 U.S. 104, 113, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).

Nothing in the record suggests that this was the case. To the contrary, the fact that six jurors assigned some weight to Hall's medical condition suggests that they understood that it was their call to make. *See Paul*, 217 F.3d at 1000 (explaining that the test is whether "there exists a reasonable likelihood that the jurors believed themselves precluded from considering relevant mitigating evidence"). There is, in short, no reason to believe that marking the form with one piece of information rather than another affected the jury's decision-making or changed its overall conclusion.

*United States v. Hall*, 945 F.3d 1035, 1042 (8th Cir. 2019). Thus, this issue has been resolved by the Eighth Circuit, and there is no reason to interview jurors in search of a constitutional error.

The second reason Hall requests to interview jurors is that he suggests there was outside influence affecting the jury's verdict when at first, the jury was unable to find a unanimous verdict, but returned two hours later after the Court instructed them to continue deliberating. (Civ. D.E. 39-1 at 8-9.) This issue was also raised on direct appeal. The Eighth Circuit found the following:

The jury had previously been instructed that its task was to choose between life in prison and a death sentence. Telling the jurors to deliberate further in an effort to reach unanimity did not "coerce" them into picking one

-10-

alternative over the other. Nor did the court tell the jurors to reconsider their positions or that they must be unanimous in the end, which are the types of statements that have necessitated prophylactic instructions in the past. *See United States v. Robinson*, 953 F.2d 433, 437 (8th Cir. 1992). Here, the court was simply exercising its judgment that it was sensible under the circumstances to ask the jury to deliberate longer before giving up. *Lowenfield*, 484 U.S. at 238, 108 S.Ct. 546; *see also United States v. Reed*, 686 F.2d 651, 652 n.1 (8th Cir. 1982) ("A supplemental instruction merely to continue deliberating after impasse ... is not properly characterized as a traditional *Allen* charge." (citing *Allen v. United States*, 164 U.S. 492, 501– 02, 17 S.Ct. 154, 41 L.Ed. 528 (1896)).

The jury's response showed that it did not feel pressured to choose either alternative. Although it continued to deliberate for only about an hour more, the jury requested three exhibits connected to the lack-of-remorse and future-dangerousness aggravating factors. *Cf. United States v. Warfield*, 97 F.3d 1014, 1022 (8th Cir. 1996) ("Although the jury's return with a verdict approximately one hour after receiving the *Allen* charge is somewhat expeditious, we do not believe the postinstruction deliberation time ... raises an inference of coercion."). This timeline suggests that the jurors continued to debate whether the death penalty was justified; discussed and reexamined the evidence that they found most compelling; and eventually agreed on a recommendation. If they felt no choice but to impose the death penalty, as Hall now claims, there would have been little reason to request the exhibits. The bottom line is that nothing here raises a red flag that there may have been coercion.

*Hall*, 945 F.3d at 1047–48.

In addition to Hall presenting these two arguments to the Eighth Circuit, Hall also included these arguments within his petition for a writ of certiorari, and the Supreme Court denied Hall's petition. Since Hall presented the substantive claims he wishes to further investigate to the Eighth Circuit, and his petition was denied by the Supreme Court, he is procedurally barred from re-litigating the claims in a § 2255 motion.

### 2. *Hall's Claims Are Speculative and Too Generalized for Consideration*

Hall argues that jury deliberations suggest the possibility of outside influence, where the jurors could not at first return a unanimous death verdict for Hall. (Civ. D.E. 39-1 at 8-9.)

This argument seeks post-trial juror interviews based on purely speculative grounds, claiming that if the jurors are interviewed, the jurors might have something to say that would be material. Speculating a possibility of outside influence in the disposition of Halls' case and contacting jurors to try and elicit witness testimony for a § 2255 hearing is insufficient to warrant conducting juror interviews. The record does not reveal any outside influence, and there are no affidavits attached to the defendant's motion demonstrating personal knowledge of outside influence by any juror.

Allegations in a motion for post-trial juror interviews cannot be based upon speculation. Indeed, in all cases to which the defendant cites, there was proper reasoning to expand the record. Hall's request for permission to interview jurors on purely speculative claims amounts to a "fishing expedition," a practice explicitly and repeatedly condemned on collateral review. *See, e.g., Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996); *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994); *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994); *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990) (§ 2255 case); *Perez v. United States*, 274 F. Supp. 2d 330, 336 (E.D.N.Y. 2003); *Kiley v. United States*, 260 F. Supp. 2d 248, 264 (D. Mass. 2003). Conclusionary allegations do not warrant discovery. *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994) (citing *Willie v. Maggio*, 737 F.2d 1372 (5th Cir. 1984)).

In *United States v. Gravely,* 840 F.2d 1156, 1159 (4th Cir. 1988), the defendant's request to interview jurors to determine if pressure and lack of adequate time for deliberation were self-imposed or the result of outside influence was properly denied, because the defendant failed to make a threshold showing of improper outside influence. (citing *Tanner v. United States*, 483 U.S. 107, 120–21 (1987)).

In this case, there is nothing on the record demonstrating an outside intrusion into the jury process; the case was fairly, impartially tried; and it is improper to contact and interview jurors nine years after the verdict in attempting to establish an outside intrusion where none is known to exist. *See United States v. Caldwell,* 83 F.3d 954, 957 (8th Cir. 1996) (holding the district court acted within its discretion in finding the defendant's "nebulous allegations" were insufficient to warrant further investigation).

## IV.  Conclusion

Accordingly, for the reasons set forth above, the Government respectfully requests that this Court deny Hall's motion for permission to contact jurors.  (Civ. D.E. 39.)

Respectfully submitted,

Teresa A. Moore
United States Attorney

By  */s/ Randall D. Eggert*
RANDALL D. EGGERT
Assistant United States Attorney
901 St. Louis, Suite 500
Springfield, Missouri  65806
Telephone:  (417) 831-4406

*Attorneys for Plaintiff*

-13-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on May 11, 2023, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

*/s/ Randall D. Eggert*
Randall D. Eggert
Assistant United States Attorney

-14-