| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:21-CV-08001-BCW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| CHARLES MICHAEL HALL, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## REPLY SUGGESTIONS IN SUPPORT OF DEFENDANT'S MOTION FOR PERMISSION TO CONTACT JURORS

Defendant Charles Michael Hall, by and through undersigned counsel, respectfully submits his Reply Suggestions in Support of Motion for Permission to Contact Jurors, to respond to two points in the government's Response.

First, Mr. Hall's motion to interview jurors is not a motion for discovery. Consequently, the government's arguments about discovery standards are irrelevant. Second, Mr. Hall has pointed to particular reasons why interviewing jurors is necessary. The government's arguments for why Mr. Hall should not be allowed to interview jurors rely on general points that do not address Mr. Hall's specific case.

As to the government's argument that Mr. Hall is entitled to discovery only upon a showing of good cause, and suggestion that the Court should not evaluate

whether Mr. Hall has shown good cause until he files his § 2255 motion, *see* Response at 4-5, this argument misses the point that a motion to interview jurors is not a motion for discovery.[1] Rather, Mr. Hall's counsel is seeking permission to reach out to jurors and ask them if they are willing to talk with counsel. The only reason Mr. Hall needs this Court's permission to contact the jurors is that the court previously exercised its discretion to prohibit the parties from contacting the jurors without permission. *See* Doc. No. 788. Just as it was within the court's discretion to prohibit the parties from contacting jurors without permission, it is well within this Court's discretion to grant this permission.

As to the government's argument that Mr. Hall has not given a sufficient reason for the Court to grant permission to interview jurors, Mr. Hall has, in fact,

---

[1] Rule 6 of the Rules Governing Section 2255 Proceedings provides that a judge may authorize discovery under the Federal Rules of Civil or Criminal Procedure. The Federal Rules of Civil Procedure explain what constitutes discovery in federal civil cases: initial disclosures, *see* Fed. R. Civ. P. 26(a)(1); disclosure of expert testimony, *see* Fed. R. Civ. P. 26(a)(2); pretrial disclosures, *see* Fed. R. Civ. P. 26(a)(3); depositions, *see* Fed. R. Civ. P. 27-31; interrogatories to opposing parties, *see* Fed. R. Civ. P. 33; requests for production to opposing parties, *see* Fed. R. Civ. P. 34; requests for admission to opposing parties, *see* Fed. R. Civ. P. 36; physical and mental examinations of the parties, pursuant to a court order, *see* Fed. R. Civ. P. 35; and court-issued subpoenas, *see* Fed. R. Civ. P. 45. Federal Rule of Criminal Procedure 16 explains what constitutes discovery in federal criminal cases. In criminal cases, the government must disclose: a defendant's oral or written statement, *see* Fed. R. Crim. P. 16(a)(1)(A)-(B); a defendant's prior record, *see* Fed. R. Crim. P. 16(a)(1)(D); certain documents and objects within its possession and control, *see* Fed. R. Crim. P. 16(a)(1)(E)-(F); and information about expert witnesses the government intends to call at trial, *see* Fed. R. Crim. P. 16(a)(1)(G). Under some circumstances, a defendant must also disclose documents and objects the defendant intends to use at trial, *see* Fed. R. Crim. P. 16(b)(1)(A)-(B); and information about expert witnesses the defendant intends to call at trial, *see* Fed. R. Crim. P. 16(b)(1)(C). Juror interviews do not fall into any of these categories. Mr. Hall is not seeking information in the possession of the government, nor is Mr. Hall seeking a subpoena to compel any non-parties to provide information.

2

made a preliminary showing of "misconduct, irregularity, or outside intrusion into the jury process." Resp. at 8. The government points out that courts generally disfavor post-verdict juror interviews and prohibit relitigation of issues raised and decided on direct appeal. *See* Response at 6-9. However, neither of these general arguments are relevant to Mr. Hall's specific case. As Mr. Hall explained in his motion, some jurors found that two undisputed mitigating factors did not exist, even though they were not factually disputed, suggesting the possibility of a mistake. In addition, the jurors quickly changed from "100 percent certainty that we are unable to reach a unanimous decision in regards to Defendant Hall," Tr. 06/02/14 at 5358, to reaching a unanimous verdict, suggesting the possibility of an outside influence.

The record on appeal did not contain the information necessary to properly adjudicate these claims. Indeed, in addressing the potential mistake, the Eighth Circuit was forced to rely on a third-hand account of what may have happened, rather than direct testimony about what actually happened. *United States v. Hall*, 945 F.3d 1035, 1042 (8th Cir. 2019). That is why these are precisely the kind of claims that must be investigated in § 2255 proceedings, to reveal evidence outside the trial record of a constitutional deficiency in Mr. Hall's death sentence. The relitigation bar is of no moment, because there is likely crucial extra-record evidence suggested by the facts of the case but unknown to the Eighth Circuit. *See*

Motion at 3 (compiling cases where courts vacated death sentences based on evidence developed in jury interviews conducted during post-conviction proceedings); *see also* Katie Moore, *Missouri man's execution should be stopped because juror could not read, lawyers say*, Kansas City Star (May 8, 2023), https://www.aol.com/news/missouri-man-execution-stopped-because-154013787.html (explaining that counsel for Michael Tisius recently discovered, by interviewing jurors, that one of the jurors could not read, which, per Missouri law, made him ineligible to serve as a juror). Any general reluctance to allow juror interviews is of no moment because the trial record points to specific oddities with this verdict but does not fully explain them, indicating the likelihood that juror interviews will reveal information falling within Federal Rule of Evidence 606(b)(2)'s exception to the no-impeachment rule that would require overturning Mr. Hall's death sentence. In addition, information from jurors may be relevant to Mr. Hall's clemency application; in deciding whether to grant clemency, the Pardon Attorney and President should be informed if jurors would support a commutation of the sentence they imposed.

Nothing in the government's response offers any persuasive reason to deny Mr. Hall's counsel permission to contact the jurors. The trial court prohibited counsel from contacting the jurors without the Court's permission because of an anti-death-penalty protest on May 23, 2014. *See* Doc. No. 788. There is no

indication that the protestors (let alone anyone affiliated with the defendants) harassed the jurors (or anyone else), and there have been no reports of any harassment in the nine years since. Undersigned counsel Angela Elleman, co-counsel Keith O'Connor, and other members of Mr. Hall's current legal team have interviewed many, many jurors, and no juror has ever complained about feeling harassed. If granted permission to contact the jurors, counsel will of course be courteous and respectful, as they have always been when interviewing jurors in the past. The vague threat of harassment does not justify preventing counsel from gathering information that, based on the limited record that exists, seems likely to reveal a violation of Mr. Hall's constitutional rights. This Court is well within its discretion to allow counsel to contact the jurors. For the reasons stated in Mr. Hall's Motion for Permission to Contact Jurors and this reply in support, the Court should grant the motion.

Respectfully submitted,

 */s/ Angela S. Elleman*
Angela S. Elleman
Chief, § 2255 Unit
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN   46204
Phone: 317-383-3520
E-Mail: angie_elleman@fd.org

Dated:  May 19, 2023

5