## DECLARATION OF STUART HUFFMAN

I, Stuart Huffman, state as follows:

1. I am over 18 years of age and competent to make this declaration.
2. I am a criminal defense lawyer practicing in Missouri. In 2010, I was appointed as second chair counsel to represent Charles Hall ("Chuck"), who was being prosecuted for killing another inmate at the Federal Medical Center in Springfield, Missouri, and potentially facing the death penalty.
3. I never had been an attorney on a capital case prior to being appointed to Chuck's case, although I had been hired to do some mitigation work on one capital case prior to Chuck's. I withdrew from Chuck's case before it went to trial.
4. Lead counsel at that time was Darryl Johnson. I knew Darryl, but he and I had never worked on a case together.
5. Darryl and I did not have a good working relationship. We failed to communicate with one another about the case and did not have regular meetings. We did not collaborate on the hiring of investigators and did not hire a mitigation specialist. I do not recall any discussions of hiring experts.
6. Any investigators working on the case were working at Darryl's direction and were his employees, such as Joe Buckmaster. I do not recall seeing any work product from any investigators, nor did I tell them any tasks that I wanted them to focus on.
7. There was some discussion of Darryl and I travelling together to Maine in the fall of 2010 to meet with Chuck's parents, but Darryl scheduled the trip without consulting my calendar. I was unavailable to go when Darryl went, so he took his wife instead of me. I never spoke with anyone in Chuck's life in person, or by phone.
8. Darryl did not tell me about what he learned while he was in Maine meeting with Chuck's parents. I never saw a memo about any discussions he had with Mr. and Mrs. Hall or any other individuals he may have spoken to. I do not recall if we ever collected any school, medical, or other records pertaining to Chuck, but I know that I did not obtain any such records through my office.
9. As Darryl was the more experienced attorney and lead counsel, I was expecting him to lead the case and tell me what he wanted me to do. He never did. I regret that I did not push for us to obtain records and hire mental health experts and a mitigation specialist. I know I did not do what Chuck deserved and did not advance any investigation of Chuck, his life, and his medical or mental health issues.
10. Darryl and I were planning to attend together a meeting with the committee in Washington, D.C. that would decide whether to seek the death penalty against Chuck. I do not believe we drafted any letters or memos or had any records or photos that we intended to provide to the committee. I believe that our intention was to tell the committee that Chuck had a loving family, that he had Crohn's disease, and that he did not have a history of violence.
11. I ultimately did not go to Washington, D.C. for this April 2011 meeting because I withdrew from the case just days prior to our planned trip. The reasons for my withdrawal are complicated: my representation of another long-time client became

1___

IFCD 00028517

problematic when she was accused of a crime in which Darryl was the alleged victim. I did not think I should have to withdraw, but Darryl and Magistrate Judge England saw otherwise, and so I withdrew.

12. Chuck was always a kind and pleasant client to me. He struggled with his physical health in profound ways that affected his energy, his mood, and his patience, as he endured pain on a daily basis. I always believed that his requests to receive the death penalty were tied to how he physically felt at the time. He waivered about his desire for the death penalty during the time I represented him, going back and forth about what he wanted. I believed his stated desire for the death penalty was due primarily to his poor medical condition and the suffering he experienced from it.

13. We did not hire a medical or mental health expert to help us understand the challenges that Chuck faced. We knew almost nothing about his childhood or life history, except that Darryl reported his parents seemed to be sweet and loving people. I had concerns that having a good and loving family, combined with his commission of this prison killing, could actually be seen as aggravating. I was confident that we did not know all of Chuck's story.

14. If I could go back in time, I would do things very differently. First, I would visit Chuck much more. I realize that he and I never formed a relationship of trust. It is unsurprising that he did not share with me his history of childhood sexual abuse, which I have heard about from his post-conviction attorneys, as we did not have the necessary rapport in which disclosing such vulnerable information was possible. If I could do this over again, I would have insisted on hiring a mitigation specialist right away to conduct extensive interviews and collect records. If I could do this over again, I would have hired mental health and medical experts right away to help understand the challenges Chuck faced and the impact of his illnesses. I did none of these things.

15. While Chuck was polite and kind, he always presented with an air of a tough guy. I always thought he was working very hard to hide his vulnerabilities and appear tough. I believe his desire to seek the death penalty was due to his medical condition and wanting to appear tough in a prison environment in which toughness is rewarded and weakness is exploited. Even at the time, he would quickly move on from stating he wanted the death penalty to inquiring about how me and my family were doing- always polite and considerate.

I, Stuart Huffman, declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Executed on ___Febuay 8ᵗʰ___ , 20_24_ , in ___Greene___ County, _MO._ .

_____
Stuart Huffman

2___

IFCD 00028518

# INDIVIDUAL ACKNOWLEDGMENT

State/Commonwealth of _Missouri_ } ss.

County of _Greene_

On this the _8th_ day of _February_ ____(Mo.), _2024_ (Yr.), before me,

_Adam Schoening_
Name of Notary Public ____, the undersigned Notary Public,

personally appeared _Stuart Huffman_
Name(s) of Signer(s)

☐ personally known to me – OR –

☒ proved to me on the basis of satisfactory evidence

<table>
<tr><td>ADAM SCHOENING<br>Notary Public - Notary Seal<br>Greene County · State of Missouri<br>Commission Number 21131746<br>My Commission Expires Apr 11, 2025</td></tr>
</table>

to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same for the purposes therein stated.

WITNESS my hand and official seal.

_Signature of Notary Public_

Place Notary Seal/Stamp Above

Any Other Required Information
(Printed Name of Notary, Expiration Date, etc.)

———— OPTIONAL ————

Not required by law, this information can be useful to those relying on the document and prevent fraud.

**Description of Any Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

| RIGHT THUMBPRINT OF SIGNER #1 | RIGHT THUMBPRINT OF SIGNER #2 |
|---|---|
| Top of thumb here | Top of thumb here |

© 2009 National Notary Association • NationalNotary.org • NNA Members-Only Hotline 1-888-876-0827 Item #15936