**From:** bob lewis <bobalew003@yahoo.com>
**Sent:** Thursday, February 21, 2013 1:20 PM
**To:** Mark H. Donatelli <mhd@rothsteinlaw.com>
**Cc:** Frederick Duchardt <fduchardt@yahoo.com>
**Subject:** U.S. v. Charles Hall - Western District of Missouri death penalty case

Good afternoon Mark:

This is a murder by an inmate of another inmate at the Medical Center for Federal Prisoners in Springfield, MO.

By the way,thanks for giving us the Mark Bezy referral.  Mr. Bezy has given us some initial terminology to obtain BOP records that have not been provided to us in the government's discovery.  I'm in the process of getting a Rule 17(c) subpoena request regarding same.  I have checked with the cap def website and have not been able to find either a sample "Touhy" letter requesting same, or, a sample Rule 17(c) request for BOP records.  Might you have access to some samples of these items?  If you do, I thank you in advance for sharing same with us.

On another matter, we will in all probability want to use Mark Cunningham with regard to the future dangerousness aggravator.  In that regard, it is my understanding that Mr. Cunningham will need information from the BOP of what its experience has been regarding the danger level for a defendant who has been convicted of a prison killing.  My request is to obtain from you a list of all defendants who have been convicted of a killing in prison.  With that list in hand, we can then get information about conduct violations for those inmates to see if there has been any serious assaultive behavior so that Mr. Cunningham can review that information and come to conclusions with regard to the actual significant danger from those incarcerated for a murder in prison.

Thanks,

Bob Lewis

TF.RL.01.001381

ROBERT D. LEWIS
ATTORNEY AT LAW
435 East Walnut Street
SPRINGFIELD, MISSOURI 65806

_____

Se Habla Español

Telephone: (417) 849-9834
FAX: (417) 864-7000
E-MAIL: bobalew003@yahoo.com

January 24, 2013

Mr. Mark A. Bezy
markabezy@gmail.com

> Re:   United States v. Charles Michael Hall
>       Western District of Missouri
>       Case No. 10-03029-02-S-GAF

Dear Mr. Bezy:

This will confirm my telephone conversation with you about possibly consulting with Fred Duchardt and me on a federal capital death case pending against our client, Mr. Hall.

A very brief summary of the situation is as follows:

1.   Mr. Hall and codefendant Wesley Coonce are charged with Murder, First Degree of Inmate Victor Castro on January 26, 2010 that occurred at the Springfield Federal Medical Center. The government has filed its notice that it is seeking the death penalty.

2.   Hall, Coonce, and Castro were all housed in the same open Ward 10B at the time of Castro's death.

3.   The government has disclosed written discovery of in excess of 8,000 pages, consisting of reports regarding the death, and Hall, Coonce, and Castro's BOP records.

4.   These records show that prior to the time Hall arrived at the Springfield Medical Center, he had indicated that he wanted to be segregated from other inmates due to his homicidal thoughts.

1

TF.RL.01.001382

5. These records also show that while at the Springfield Medical Center and prior to his death, it was well known in the Ward that Inmate Brusch (who was housed in the same Ward) had been assaulting a staff officer and that Castro came to the assistance of the staff officer and helped restrain Brusch from the assault until other staff officers arrived; that as a result of this assistance by Castro, he had been awarded $50.00 in the commissary.

Some of the areas we would want you to consult with us about are:

a. Should the BOP have had Mr. Hall in an open ward?

b. Should the BOP have had Castro and Brusch in the same open ward knowing the prison culture of what it means to be a snitch?

c. Fred and I are of the opinion that the BOP has not given to the AUSA all of its records regarding this matter, i.e., we know that following the death of Castro, that additional security cameras were installed in this ward but there are no reports disclosed by the AUSA regarding this or the reasons why this was done. That being the case, we would be wanting to know what additional BOP records we should be requesting, using the BOP nomenclature for these missing records. And, for any other records your review should disclose.

d. Regarding the government's allegations that Mr. Hall deserves the death penalty due to his "future dangerousness," does the BOP have facilities to house Mr. Hall for life that would prevent any such possibility of future dangerousness.

Fred and I are CJA appointed in this case. Therefore, before we could retain your services, we would have to obtain approval from the Court for this expenditure. For that reason, I am requesting that you tell us what you would charge for your services. In the event you need further information to arrive at this fee bill, please tell me what additional information you need to do so.

Sincerely,
*Robert D. Lewis*

Robert D. Lewis

2

**Subject:** Re: Charles Michael Hall Death Case

**From:** bob lewis (bobalew003@yahoo.com)

**To:** fduchardt@yahoo.com;

**Date:** Tuesday, January 22, 2013 4:15 PM

Fred:

I'll give you a call after I finish with Chuck.

Bob

---

**From:** Frederick Duchardt <fduchardt@yahoo.com>
**To:** bob lewis <bobalew003@yahoo.com>
**Sent:** Tuesday, January 22, 2013 4:04 PM
**Subject:** Re: Charles Michael Hall Death Case

Bob

Mark Bezy was one of the folks I had in mind, and I'm glad Donatelli pointed you his direction. Bezy was the BOP point man on data compilation for years, and his studies formed the backbone of much of the research done early on by Mark Cunningham and Tom Reidy. I have also heard of the other guy, and he sounds good as well. I suggest getting cost estimates from each after giving them a brief rundown of what we shall need. I still would prefer if we could get a local guy, if possible, so I want you to stay on chasing down the Springfield guys as well.

On the subject of your meeting with Chuck, I have one issue which I want for both of us to intermittently hit with Chuck, and that concerns whether he has been the victim of physical, sexual or psychological abuse. This is many times a tough nut to crack because, so often, people are unwilling to out themselves and the abuser. Chuck has denied physical and sexual abuse, but has described at least one instance of psychological abuse by his adoptive Mom, when he believed she was planning on committing suicide, and taking him and Michelle with her. Neither Mom nor Michelle remember this. It could be that Chuck has confabulated this, or it could be that Michelle and Mom are covering or have conveniently forgotten. Either way, we want to encourage Chuck to disclose things, and so I would like for you to use opportunities to make clear to him that he should never be embarrassed about telling us anything about himself, that it could be important. Other than that, cover whatever you wish with Chuck.

I want for us to get together tomorrow while you are in town. I have things scheduled all morning tomorrow, so it will have to be in the afternoon. Why don't you call me after you are finished with Chuck, and we'll see if we can make connections.

Fred

---

**From:** bob lewis <bobalew003@yahoo.com>
**To:** Frederick Duchardt <fduchardt@yahoo.com>
**Sent:** Tuesday, January 22, 2013 9:29 AM
**Subject:** Fw: Charles Michael Hall Death Case

TF.RL.01.001042

Ex. 69 Page 4 Case 4:21-cv-08001-BCW    Document 70-69    Filed 04/29/24    Page 4 of 7

Good Morning, Mr. Donatelli:

Fred Duchardt and I represent Mr. Hall in a FDPA case in the Western District of Missouri, Case No. 10-03029-02-CR-S-GAF. We need to consult with and possibly use as an expert, a federal incarceration expert such as an ex federal warden with regard to the workings of the Medical Center for Federal Prisons in Springfield, MO where the death of Inmate Victor Castro occurred.

Specifically, one of the issues we have in our case is whether the defense can throw some blame for the death onto the Medical Center due to its housing certain inmates in the same ward. Hall, Castro, and Inmate Brusch were all housed in the same ward at the time of Castro's death.. It was generally known that in a prior incident, Castro has come to the assistance of a staff officer who was being assaulted by Brusch; reportedly Castro physcially restrained Brusch from continuing his assault on the officer. In return for his assistance, Castro was given a $50.00 commisary reward.

Any suggestions as to who I should contact?

Thanks,

Bob Lewis
cell: 417-849-9834
fax: 417-864-7000

TF.RL.01.001043

Ex. 69, Page 5 of 7    Case 4:21-cv-08001-BCW    Document 70-69    Filed 04/29/24    Page 5 of 7

**Subject:** RE: Charles Michael Hall Death Case

**From:** Mark H. Donatelli (mhd@rothsteinlaw.com)

**To:** bobalew003@yahoo.com;

**Date:** Tuesday, January 22, 2013 8:53 AM

Bob,

I think Mark Bezy would be excellent for this analysis.I have worked with him on a number of cases.In the Richardson case he was qualified as an expert on prison culture and allowed to testify in guilt innocence on how prison culture was relevant to the motive for the killing.It sounds like you have the same situation here-this was a set-up,unintentional or possibly intentional, but any competent administrator should have known there would be retaliation towards Brusch for that incident.I suspect Mark would arrive at the same conclusion.

I am also attaching the resume of an expert being used by attorneys in the ADX mental health litigation.Bob Weis had experience as a BOP administrator and worked at the BOP Rochester Medical Center.He may be able to testify as to the separation issues caused by incident .He may also be able to evaluate the treatment and care received by Charles.He could also testify to the kind of conditions and treatment Charles will receive if he receives a life sentence.

You might consider using both of them.

If you and Fred want to discuss this further let me know-I just had 2 trials continued so I am available to come to Springfield if that would be useful.

Thanks,

Mark


Mark H. Donatelli

ROTHSTEIN, DONATELLI, HUGHES, DAHLSTROM,

SCHOENBURG & BIENVENU, LLP

P.O. Box 8180

Santa Fe, NM 87504-8180

(505) 988-8004

fax: (505) 982-0307

mhd@rothsteinlaw.com


This communication and any attachments are ATTORNEY-CLIENT PRIVILEGED AND CONFIDENTIAL and intended for use only by the individual or entity named above as the intended recipient. If you are not the intended recipient, reading,

distributing, or copying this communication is strictly prohibited. If you have reached this communication in error, please immediately notify the sender and delete this e-mail and any attachments. Thank you.

**From:** bob lewis [mailto:bobalew003@yahoo.com]
**Sent:** Tuesday, January 22, 2013 6:18 AM
**To:** Mark H. Donatelli
**Subject:** Charles Michael Hall Death Case

Good Morning, Mr. Donatelli:

Fred Duchardt and I represent Mr. Hall in a FDPA case in the Western District of Missouri, Case No. 10-03029-02-CR-S-GAF. We need to consult with and possibly use as an expert, a federal incarceration expert such as an ex federal warden with regard to the workings of the Medical Center for Federal Prisons in Springfield, MO where the death of Inmate Victor Castro occurred.

Specifically, one of the issues we have in our case is whether the defense can throw some blame for the death onto the Medical Center due to its housing certain inmates in the same ward. Hall, Castro, and Inmate Brusch were all housed in the same ward at the time of Castro's death.. It was generally known that in a prior incident, Castro has come to the assistance of a staff officer who was being assaulted by Brusch; reportedly Castro physcially restrained Brusch from continuing his assault on the officer. In return for his assistance, Castro was given a $50.00 commisary reward.

Any suggestions as to who I should contact?

Thanks,

Bob Lewis

cell: 417-849-9834

fax: 417-864-7000

http://us-mg6.mail.yahoo.com/neo/launch?.rand=chcm8l60t7oi6                    2/12/2013

TF.RL.01.001084