| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:21-CV-08001-BCW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| CHARLES MICHAEL HALL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SUGGESTIONS IN SUPPORT OF MOTION FOR AUTHORIZATION TO CONDUCT DISCOVERY UNDER THE FEDERAL RULES OF CIVIL PROCEDURE AND CRIMINAL PROCEDURE

Charles Michael Hall, by and through counsel, has moved for "authoriz[ation] to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure" pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings. Mr. Hall filed his § 2255 Motion on April 29, 2024. *See* Doc. 70. The "specific allegations before the court" in Mr. Hall's § 2255 Motion establish "good cause" for this Court to authorize Mr. Hall to conduct discovery, as required by Rule 6. *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997).

In seeking to serve discovery and begin the process of obtaining the documents and other information he needs to successfully prosecute his § 2255 motion, Mr. Hall requests only the most basic and elementary form of relief. The relief he requests would be automatically afforded to any litigant in any other type of case, without the Court's involvement. More importantly, Mr. Hall has established that he is entitled to this relief, pursuant to Rule 6, because Mr. Hall's § 2255 motion raises Hall's allegations that, if proven true, would entitle him to relief from his death sentence. Accordingly, Mr. Hall has shown good cause to afford him access to the basic

1

tools of discovery. Therefore, the Court should grant Mr. Hall's motion and authorize him to conduct discovery pursuant to the Federal Rules of Civil and Criminal Procedure.

## I. Background

Mr. Hall's § 2255 motion alleges serious constitutional errors that, if proven, justify relief from his unreliable death sentence. Most notably, Mr. Hall has alleged that his counsel was ineffective by failing to conduct an adequate life history investigation. Mr. Hall's trial team spoke to nobody outside Mr. Hall's immediate family who knew him before he was sixteen. They had no idea he was a victim of sexual abuse, that he has a structurally abnormal brain, and that many of the symptoms attributed to Mr. Hall being "antisocial" were in fact symptoms of PTSD. Mr. Hall also has alleged other serious violations of his constitutional rights. These include *Brady* and *Napue* violations, apparently part of a pattern of misconduct by attorneys in the Capital Case Section (CCS), notably attorney James Peterson, who came from Washington, D.C., to prosecute Mr. Hall and Mr. Coonce.

Mr. Hall's § 2255 team conducted the life history investigation that trial counsel failed to conduct. The § 2255 team interviewed family members, friends, teachers, classmates, acquaintances, and mental health providers, uncovering crucial information that was not presented at trial. The § 2255 team submitted dozens of record requests, and responses provided crucial information not presented at trial. The § 2255 team took the sworn statement of lead trial counsel. The § 2255 team attempted to speak with the other members of the trial team, some of whom agreed to speak and some of whom refused.[1]

---

[1] Two members of the trial team, attorney Robert Lewis and investigator Michael Armstrong, are deceased.

There is, however, information § 2255 counsel was unable to obtain without the aid of depositions, subpoenas for documents, or other tools of discovery. Unlike the government, § 2255 counsel has no tools aside from court-authorized discovery to compel anyone to provide information. As such, if an individual with crucial information declines to speak or provide records to § 2255 counsel—including individuals who have ethical obligations to Mr. Hall, such as former counsel—there is nothing § 2255 counsel can do without being able to issue subpoenas.

As noted, some individuals, including members of the trial team, have declined to speak with undersigned counsel or spoke with undersigned counsel but declined to provide a sworn declaration. These individuals include counsel Darryl Johnson, counsel Lynn Johnson, trial counsel Michael Walker, trial defense expert Dr. Robert Fucetola, and BOP psychologist and government witness Dr. Chad Brinkley. In order to fully develop the facts supporting Mr. Hall's claims, undersigned counsel must depose these individuals.

Similarly, some record custodians, including those who may have records about the Shaker Mountain School, where Chuck was sexually abused after at least one botched investigation into abuse by the headmaster, have indicated that they will not provide records without a subpoena. And numerous Freedom of Information Act Requests for information about misconduct at CCS have been denied or simply gone unanswered. In order to fully develop the facts supporting Mr. Hall's claims, undersigned counsel must subpoena these documents.

Because Mr. Hall needs to take depositions and issue subpoenas to develop additional evidence to support his claims, he now seeks leave to conduct discovery. He has satisfied the "good cause" standard that empowers this Court to authorize him to conduct discovery: In a § 2255 case, "[a] judge may, for good cause, authorize a party to conduct discovery under the

3

Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6, Rules Gov'ing 2255 Proceedings. Good cause for discovery is established "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief[.]" *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997); *see also Foy v. United States*, 285 F.R.D. 407, 409 (N.D. Iowa 2012).[2]

Mr. Hall's § 2255 Motion makes specific allegations, as *Bracy* requires. Accordingly, this Court should authorize Mr. Hall to conduct discovery pursuant to the Federal Rules of Civil and Criminal Procedure.

**II. Initial Discovery Requests**

If the Court authorizes Mr. Hall to conduct discovery, Mr. Hall intends to initially seek the following documents and testimony:

***Depositions***

Depose counsel Darryl Johnson

- Darryl Johnson spoke with § 2255 counsel but then, citing advice from his malpractice insurer, declined to sign a declaration or a letter in support of Mr. Hall's petition for clemency. Keith O'Connor attempted to follow up with Mr. Johnson and explain the necessity of having his statement in the record, meaning that if he would not sign a declaration counsel would likely need to seek to depose him. Mr. Johnson told Mr. O'Connor to "do what you gotta do brother." Mr. Hall has alleged that Mr. Johnson was ineffective for failing to conduct an adequate life history investigation and for telling the Department of Justice that Mr. Hall wanted a death sentence. As such, Mr. Johnson's testimony is crucial to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase.

Depose counsel Lynn Johnson

- Lynn Johnson has refused to speak with § 2255 counsel. She would not agree to speak in person or by phone and she did not respond to a letter from Angie Elleman. Mr. Hall has

---

[2] *Bracy* is a § 2254 case but its "good cause" standard has been applied to § 2255 proceedings. *Foy* is an example of a court applying *Bracy* in a § 2255 case, while also noting the distinctions between the Rules Governing Section 2255 Proceedings and the Rules Governing Section 2254 Cases, namely that the discovery allowed in § 2255 cases is broader.

alleged that Ms. Johnson was ineffective for failing to conduct an adequate life history investigation. She was married to counsel Darryl Johnson during his representation of Mr. Hall, then became his co-counsel upon the withdrawal of Stuart Huffman. As such, Ms. Johnson's testimony is crucial to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase.

Depose trial counsel Michael Walker

- Michael Walker spoke with post-conviction counsel and then sent counsel a draft declaration that was not consistent with counsel's recollection of the conversation. Counsel opted not to ask Mr. Walker to sign a declaration that was so inconsistent with counsel's own recollection. A deposition would allow clarification of the facts surrounding Mr. Walker's representation of Mr. Hall. Mr. Walker participated in planning the trial strategy, including decisions about investigation and experts, and was in court for at least parts of all phases of the trial. Mr. Hall has alleged that Mr. Walker was ineffective for failing to conduct an adequate life history investigation, among other serious errors in preparing for and litigating Mr. Hall's trial. As such, Mr. Walker's testimony is crucial to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase; Claim 2: Ineffective Assistance of Trial Counsel at the Culpability Phase; Claim 3: Ineffective Assistance of Trial Counsel During Jury Selection; Claim 4: Conflict of Interest.

Depose trial expert Dr. Robert Fucetola

- Dr. Robert Fucetola spoke with § 2255 counsel and stated that information he did not know about Mr. Hall, including brain abnormalities apparent in the MRI/PET and his experience of sexual abuse, would have changed his testimony. Dr. Fuctola then declined to sign a declaration. Mr. Hall has alleged that trial counsel was ineffective for failing to conduct an adequate life history investigation, failing to obtain brain imaging, and failing to provide experts, including Dr. Fucetola, with the information necessary to testify completely and accurately about Mr. Hall. As such, Dr. Fucetola's testimony is crucial to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase.

Depose government witness BOP psychologist Dr. Chad Brinkley

- Dr. Chad Brinkley did not return telephone calls from post-conviction counsel. Dr. Brinkley testified about his interactions with Mr. Hall on the day of the homicide after the homicide occurred. Although he was asked generally about his interactions with Mr. Hall on that day, he did not mention that he had spoken to Mr. Hall earlier in the day. BOP Psychiatrist Dr. Patrick Gariety spoke to Mr. Hall prior to the homicide with Dr. Brinkley. Dr. Gariety was not called to testify. Dr. Gariety signed a declaration explaining that when he and Dr. Brinkley spoke to Mr. Hall prior to the homicide, Mr. Hall asked to speak with one of them privately. This is powerful mitigating evidence that Dr. Brinkley omitted from his testimony. And trial counsel did not interview him. As such, Dr. Brinkley's testimony is crucial to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase; Claim 5: *Brady* Violations and Claim 7: *Napue* Violation (Brinkley Testimony).

5

Depose BOP psychologist Dr. Elizabeth Weiner

- Dr. Weiner declined to speak with post-conviction counsel. Discovery materials provided to trial counsel indicate that inmate David Breusch told Dr. Weiner that he'd submitted a written complaint that things were getting "out of hand" on 10-B in the days leading up to the homicide. The complaint itself has never been provided to defense counsel. Additionally, former Lieutenant Joe Buckmaster identified Dr. Weiner as someone who would regularly assign co-defendant Coonce to Unit 10-B where he was able to roam freely, rather than in a more restrictive lockdown unit, despite his criminal history, frequent write-ups for misconduct, and volatile behavior. As such, Dr. Weiner's testimony is crucial to, at minimum, Claim 5: *Brady* Violations.

Depose government witness Correctional Officer Robert Logsdon

- Mr. Logsdon declined to speak to post-conviction counsel. He was on duty when the homicide occurred. Prior to the homicide, he had received disciplinary write-ups for inattention, but full information about his disciplinary history was not provided to trial counsel. Moreover, although trial counsel was generally aware of Mr. Logsdon having received disciplinary write-ups for inattention, and Mr. Logsdon testified, trial counsel failed to ask questions of Mr. Logsdon that would have elicited information about the role his inattention played in Mr. Castro-Rodriguez's death. Indeed, Mr. Logsdon's former supervisor, Lieutenant Joe Buckmaster, has said that Mr. Castro-Rodriguez's death was partly attributable to Mr. Logsdon. As such, Mr. Logsdon's testimony is crucial to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase and Claim 5: *Brady* Violations.

### *Requests for Production of Documents*

- BOP Employee Disciplinary files for relevant BOP employees, including those who testified at trial and those who were on duty at the time of the homicide. Because trial counsel failed to present evidence about the role BOP mismanagement played in Mr. Castro-Rodriguez's death and because the government did not disclose complete information about BOP employees' disciplinary history, these documents are relevant to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase and Claim 5: *Brady* Violations.

- Any documents related to Dr. Chad Brinkley's treatment of Mr. Hall. Because Dr. Brinkley failed to tell the jury that Mr. Hall asked to speak with him or Dr. Gariety on the day of the homicide, these documents are relevant to, at minimum, Claim 5: *Brady* Violations and Claim 7: *Napue* Violation (Brinkley Testimony).

- Any documents related to Dr. Chad Brinkley's conversations with government investigators or attorneys between the date of the homicide and his trial testimony. The government has not provided any documentation of any interviews with Dr. Brinkley. In fact, the government did not provide documentation of interviews with either of the mental health professionals called to testify in the culpability phase (and these omissions are similar to a pattern in other cases where courts have determined that Mr. Peterson committed misconduct). When he testified, Dr. Brinkley failed to tell the jury that Mr. Hall asked to speak with him or Dr. Gariety on the day of the homicide. Dr. Gariety

6

voluntarily spoke to § 2255 counsel and said that Mr. Hall asked to speak with him or Dr. Brinkley on the day of the homicide, but he was not called to testify. Documents related to conversations between Dr. Brinkley and the government are relevant to, at minimum, Claim 5: *Brady* Violations and Claim 7: *Napue* Violation (Brinkley Testimony).

- Any documents related to Dr. Patrick Gariety's conversations with government investigators or attorneys between the date of the homicide and his trial testimony. The government has not provided any documentation of any interviews with Dr. Gariety. In fact, the government did not provide documentation of interviews with either of the mental health professionals called to testify in the culpability phase (and these omissions are similar to a pattern in other cases where courts have determined that Mr. Peterson committed misconduct). When he testified, Dr. Brinkley failed to tell the jury that Mr. Hall asked to speak with him or Dr. Gariety on the day of the homicide. Dr. Gariety voluntarily spoke to § 2255 counsel and said that Mr. Hall asked to speak with him or Dr. Brinkley on the day of the homicide, but he was not called to testify. Documents related to conversations between Dr. Gariety and the government are relevant to, at minimum, Claim 5: *Brady* Violations and Claim 7: *Napue* Violation (Brinkley Testimony).

- Any documents related to a written request to staff (aka "cop-out") by David Bruesch about things being "out of hand" on Unit 10-B. Because the government did not disclose the cop-out to trial counsel, these documents are relevant to, at minimum, Claim 5: *Brady* Violations.

- Any records related to Darryl Johnson's presentation to the Department of Justice. Because Mr. Johnson told the DOJ that Mr. Hall wanted the death penalty rather than presenting a mitigation case, these documents are relevant to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase.

- Any DOJ Capital Case Section memos and training materials about capital jury selection. Because the government struck a disproportionate number of female potential jurors and counsel made no objection, these documents are relevant to, at minimum, Claim 3: Ineffective Assistance of Counsel During Jury Selection.

- Any DOJ Capital Case Section memos and training materials about prosecutors' *Brady* obligations. These documents are relevant to, at minimum, Claim 5: *Brady* Violations.

- Any records related to allegations of professional misconduct by attorneys working in the Capital Case Section at the time of Mr. Hall's trial, including but not limited to James D. Peterson. These documents are relevant to, at minimum, Claim 5: *Brady* Violations; Claim 6: *Napue* Violation (Bezy Testimony); and Claim 7: *Napue* Violation (Brinkley Testimony).

### *Requests to Serve Third-Party Subpoenas*

- Subpoenas to Vermont government agencies that may have information about investigations into Shaker Mountain School or Jerome (Jerry) Mintz. Because trial counsel failed to learn that Mr. Mintz sexually abused Mr. Hall and present this

mitigating evidence to the jury, these documents are relevant to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase.[3]

The discovery requests listed above make clear that the information Mr. Hall seeks is relevant to his specific allegations. Mr. Hall is not attempting to engage in a fishing expedition.

### III. Legal standards

This Court should authorize Mr. Hall to conduct discovery, starting with the discovery requests listed above, because he has satisfied Rule 6's "good cause" standard. The crux of the "good cause" standard is that the petitioner has made specific, not general, allegations. Satisfying the "good cause" standard does not require the petitioner to already have marshalled the facts to support his claim; instead, "it is *the duty* of the court to provide the necessary facilities and procedures for an adequate inquiry" even when "[i]t may well be . . . that petitioner will be unable to obtain evidence sufficient to support a finding" that entitles him to relief. *Bracy*, 520 U.S. at 909 (emphasis added); *see also See Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005) (quoting *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997)).

Additionally, although the "good cause" standard applies to both, there are significant differences between discovery in § 2255 cases and discovery in § 2254 cases. *See Foy*, 285 F.R.D. at 409. Section 2255 cases are initial-review collateral proceedings—they are the first and only opportunity to investigate and litigate ineffective assistance of counsel claims, as well as *Brady* claims, and any other claims that depend on evidence outside the trial record. By contrast, Section 2254 cases happen after initial-review collateral proceedings have already occurred in state court. In § 2254 cases, claims like ineffective assistance of counsel are first raised in state court. Factual development is supposed to take place in state court, where the claims are first

---

[3] By specifying that he will make these requests initially, Mr. Hall does not waive his right to seek additional discovery in the future.

raised. But in § 2255 cases, there is no other court in which to raise these claims, and no other court that could authorize discovery.

Because factual development in § 2254 cases should take place in state court, it is no surprise that Rule 6(a) of the § 2254 Rules allows the federal judge presiding over the § 2254 to "limit the extent of discovery." By the same token, because in § 2255 cases there is no collateral review in any other court, meaning there is nowhere else for factual development to take place, it is no surprise that the language of Rule 6(a) of the Rules Governing Section 2255 Proceedings is different. Rule 6(a) of the Rules Governing Section Proceedings states, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." The § 2255 Rules make no mention of the judge limiting discovery.[4] The § 2255 Rules contemplate that the movant in a § 2255 case will be able to rely on the typical tools of discovery to factually develop his claims during his first and only round of collateral review.

According to these Rules, Mr. Hall requests authorization to "conduct discovery" by serving requests for production of documents on the government pursuant to Federal Rule of Civil Procedure 34, serving interrogatories on the government pursuant to Federal Rule of Civil Procedure 33, taking depositions pursuant to Federal Rule of Civil Procedure 30, and serving subpoenas pursuant to Federal Rule of Civil Procedure 34(a) and 45.

## III. Conclusion

The relief sought by this motion is limited, in that Mr. Hall seeks only leave to conduct

---

[4] Of course, in every case, the Court has the power to limit discovery in order to prevent abuse, prevent the disclosure of confidential information, etc. But by not inviting the Court to limit discovery in § 2255 cases, the § 2255 Rules make clear that discovery in § 2255 cases is more expansive than discovery in § 2254 cases.

9

discovery pursuant to the Federal Rules of Civil and Criminal Procedure. Mr. Hall does not seek an order that any particular request satisfies the relevancy provisions of the Federal Rules or any of the other requirements of those rules. Nor does he seek the adjudication of any rights as between him and the United States Attorney's Office or any third party. Those issues, if any, can be best addressed in the typical manner in which discovery issues are addressed: after service of a discovery request, the filing of objections and a meet and confer.

Instead, Mr. Hall asks this Court to issue an order that authorizes him to conduct discovery, which would allow him to serve requests for productions on the government and serve subpoenas to key witnesses, pursuant to the Federal Rules of Civil and Criminal Procedure. To the extent that there are no objections to Mr. Hall's specific requests, then this Court will not be called upon to intervene. Even if there are objections to some requests, the Court will be required to intervene only as to the requests that draw objections, and not required to weigh in on the unobjectionable requests for documents or information that all agree Mr. Hall is entitled to. Thus, with this motion, Mr. Hall asks only that he be able to proceed with unobjectionable discovery requests without the need to involve the Court, and that any objections to his discovery requests be handled on an individual basis.

Section § 2255 proceedings are Mr. Hall's *only* opportunity to litigate claims of ineffective assistance of counsel, among other claims. To fully develop these claims, Mr. Hall must, though § 2255 counsel, be able to speak with trial counsel and trial experts, among other witnesses, and collect records about the abuse trial counsel was unaware of, among other documents.

10

Therefore, for the reasons stated above, the Court should grant Mr. Hall's Motion for

Authorization to Conduct Discovery.

Respectfully submitted,


 /s/ Angela S. Elleman
Angela S. Elleman
Chief, Capital § 2255 Unit
F. Italia Patti
Assistant Federal Defender
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN   46204
Phone: 317-383-3520
E-Mail: angie_elleman@fd.org
italia_patti@fd.org

Keith O'Connor
Mo Bar No. 6313
PO Box 22728
Kansas City, MO 64113
Phone: 816-225-7771
E-Mail: keith@keithoc.com

Dated:  July 9, 2024