**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

CHARLES MICHAEL HALL,

              Petitioner,

    v.

UNITED STATES OF AMERICA,

              Respondent**.**

Civil No.  21-08001-CV-S-BCW
Crim. No. 10-03029-02-CR-S-BCW

## GOVERNMENT'S RESPONSE IN OPPOSITION TO PETITIONER'S MOTION TO CONDUCT DISCOVERY

The respondent, the United States of America, respectfully provides the following response to Charles Michael Hall's motion for authorization to conduct discovery. (Civ. D.E. 77.) The Government's response to Hall's § 2255 motion is not due for several months, and the scope of contested issues for which discovery might even possibly be warranted, especially under the good cause standard that applies to this motion, will not even begin to take shape until the Government does. Given the extremely premature nature, movant fails to show good cause for the requested discovery. The Government provides the following suggestions to Hall's motion for discovery:

### I. **Summary**

Following a jury trial, Hall was convicted of first-degree murder. The jury unanimously recommended that Hall be sentenced to death, and this Court imposed that sentence. On appeal, Hall's conviction and sentence were upheld. *United States v. Hall*, 945 F.3d 1035 (8th Cir. 2019). Hall's request for panel rehearing and rehearing en banc was denied on March 17, 2020. Hall's writ of certiorari was denied on March 22, 2021. *Hall v. United States*, 141 S. Ct. 1694 (2021).

On April 29, 2024, Hall filed a motion to vacate his sentence under 28 U.S.C. § 2255. (Civ. D.E. 70.)[1] Hall has now filed the instant motion requesting permission to conduct discovery. (Civ. D.E. 77.) The Government's response to Hall's motion is not due until February 28, 2025. (Civ. D.E. 76.)

## II. **Discussion**

### A. *Good Cause for Discovery*

"'A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.'" *Newton v. Kemna*, 354 F.3d 776, 783 (8th Cir. 2004) (quoting *Bracy v. Gramely*, 520 U.S. 899, 904 (1997)). The rules governing proceedings under 28 U.S.C. § 2255 provide that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Habeas Corpus Rule 6(a). In order to show "good cause" under Rule 6(a), a petitioner must provide the Court with "specific allegations [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908 09.

The Eighth Circuit has affirmed that there is no constitutional requirement to discovery materials until after the district court has determined such is necessary to resolve "a pending, nonfrivolous case." *Chapman v. United States*, 55 F.3d 390, 390 91 (8th Cir. 1995). This is the same standard required under *Bracy*. *See also Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994) (courts should not allow prisoners to use federal discovery when the petitioner has not set out

---

[1] "D.E. refers to the docket entries in Hall's underlying criminal case, No. 10-03029-02-CR-S-BCW. "Civ. D.E." refers to the docket entries in Hall's civil case, No. 21-08001-CV-S-BCW.

specific allegations which require discovery to litigate, for fishing expeditions, or based on mere speculation).

A court's denial of discovery is discretionary and turns on whether the requested discovery is indispensable to a fair, rounded development of the material facts." *Toney v. Gammon*, 79 F.3d 693, 700 (8th Cir. 1996). A movant's failure to specifically state what will be revealed by the records or how the records will establish innocence is fatal to a discovery claim. *Dyer v. United States*, 23 F.3d 1421, 1424 (8th Cir. 1994). Mere speculation that the discovery may be exculpatory or aid in the claims would not establish good cause for a discovery request. *Strickler v. Greene*, 527 U.S. 263, 286 (1999).

Under this standard, a request for discovery must rely on specific factual allegations. *Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998) (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)); *see also Teti v. Bender*, 507 F.3d 50, 60 (1st Cir. 2007) (observing that "[a] habeas proceeding is not a fishing expedition"). A petitioner may not obtain discovery based upon a generalized request untethered to specific factual allegations demonstrating that he is entitled to relief. *See United States v. Wilson*, 901 F.2d 378, 382 (4th Cir. 1990).

Moreover, good cause does not exist if a defendant premises a discovery request on a claim that fails as a matter of law. *See Thomas v. Taylor*, 170 F.3d 466, 474 (4th Cir. 1999) (finding that trial court did not abuse its discretion in denying discovery request related to claim that failed as a matter of law).

-3-

### B. *Response to Hall's Request for Discovery*

#### 1. *Depositions*

Hall's requests for depositions are particularly premature because this Court has yet to have an opportunity to review the claims made and determine whether any of those claims warrant an evidentiary hearing. *See* Section 2255 Rule 8. If a hearing is ordered, both parties will be obliged to produce any witness statements pursuant to Fed. R. Crim. P 26.2. *See* Section 2255 Rule 8(d). Were good cause presented, this Court could, at the appropriate time, order that any Rule 26.2 statements be produced in advance of an evidentiary hearing which would obviate the need for pre-hearing discovery in most, if not all instances, just as it does in criminal cases, where no depositions are allowed. *See* Section 2255 Rule 6 (providing discovery may be conducted under rules of civil or criminal procedure). These requests must be denied at this time, and as shown below, there is not good cause to order these depositions regardless of them being premature. If this Court orders an evidentiary hearing on any of the movant's claims, movant can take any testimony needed to prove the claim at the evidentiary hearing.

Taking each request individually, the Government respectfully opposes these discovery requests for the following additional reasons:

a. Request to depose counsel Darryl Johnson. Hall provides the following:

> Darryl Johnson spoke with § 2255 counsel but then, citing advice from his malpractice insurer, declined to sign a declaration or a letter in support of Mr. Hall's petition for clemency. Keith O'Connor attempted to follow up with Mr. Johnson and explain the necessity of having his statement in the record, meaning that if he would not sign a declaration counsel would likely need to seek to depose him. Mr. Johnson told Mr. O'Connor to "do what you gotta do brother." Mr. Hall has alleged that Mr. Johnson was ineffective for failing to conduct an adequate life history investigation and for telling the Department of Justice that Mr. Hall wanted a death sentence. As such, Mr. Johnson's testimony is crucial to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase.

<u>Government's Response:</u>

The Government opposes the request. Darryl Johnson's representation of Hall was for a limited time, in the case's early stages, and prior to extensive litigation. Specifically, Johnson represented Hall from April 23, 2010, to August 14, 2012. (Crim. D.E. 11, 183.) During Johnson's representation, Johnson requested a psychiatric examination of Hall on August 3, 2011, and expert services of an investigator on September 12, 2011, to which this Court approved. (Crim. D.E. 65, 66, 73, 84.) On July 11, 2012, Johnson filed a motion to dismiss the superseding indictment against Hall. (Crim. D.E. 176.) Prior to the Court deciding the motion to dismiss, Johnson filed a motion to withdraw on August 14, 2012, and attorneys Frederick Duchardt, Jr. and Robert Lewis were appointed to represent Hall on August 21-22, 2012. (Crim. D.E. 183-186.)

In evaluating counsel's conduct, the court should avoid "the distorting effects of hindsight," *Strickland v. Washington*, 466 U.S. 668, 689 (1984); and "try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (quotation omitted). A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (quoting *Strickland*, 466 U.S. at 689).

Deposing Darryl Johnson is unnecessary considering the time frame of Johnson's representation, the clear record of events, and competent attorneys taking over the case almost two years prior to trial. At the time of Johnson's representation, he had already secured a psychiatric examination, hired an expert investigator, and had a pending motion to dismiss the superseding indictment. After Johnson's representation of Hall ended, extensive litigation occurred from August 2012, up to the first day of trial on April 28, 2014, which included, inter alia, suppression

-5-

motions and evidentiary hearings. Hall has failed to demonstrate that Johnson was ineffective for failing to conduct an adequate life history investigation, as the investigation was still ongoing, and the case was in its early stages. Moreover, at the time of Johnson's legal representation, had the Court ruled in favor of dismissing the superseding indictment, there would have been no need to conduct a life investigation.

Regarding the allegation that Johnson told the Department of Justice that Hall wanted a death sentence, this information was already known, because Hall wrote two letters to the government and defense counsel stating he wanted the death sentence. Specifically, Hall wrote a letter addressed to the U.S. Attorney's Office on August 12, 2010, entered as Government's Exhibit 214, which stated the following:

> Mr. Randall Eggert, I met with Attorney Stuart Huffman recently. I have made it clear to him and Darryl Brent Johnson, Jr., that the end result of this case will be the death penalty. You have made it clear that that is the end result you are seeking as well. If you could guarantee that, I would enter a plea of guilty. I'll tell you the same thing I've said to the captain here and Stuart. The only thing that will stop me from killing again is to put me to death. That will not be limited to inmates but staff as well. I just want to make myself clear on this issue. I will continue killing every chance I get. Sincerely, Charles Michael Hall.  (Tr. 1529-1530.)

Hall wrote a second letter addressed to counsel and sent to the government, on or about November 16, 2010, Government's Exhibit 215, which contained the following paragraph:

> Whereas my position still stands, I'm wanting a sentence of death. I would like you to file a motion to waive any and all [unintelligible] psychological evaluations requested by the government. I would like Stuart to discuss this with the Assistant United States Attorney, Mr. Randall D. Eggert. As you and Stuart know, I'm full competent to stand trial. I know the difference between right and wrong. I wasn't suffering from psychosis before, during or after the homicide. I planned, calculated and executed the homicide with a clear mind and with clear thinking. I fully understand the charges against me and fully under the penalties in which I face and if necessary I will say the same to Judge England in open court, therefore, it'll be on record. I'll also want to point out that at no time will I claim ineffective

assistance of counsel. I'm very satisfied with the representation I've received by both you and Stuart." (Tr. 1532-33.)

Thus, this information is cumulative and does not warrant a deposition, as Hall specifically requested Johnson to discuss this issue with the government. It also further represents that at the time of Johnson's representation, Hall was not interested in a life investigation to mitigate his chances of receiving the death penalty. Again, counsel's representation should not be viewed in hindsight, but instead how it appeared to counsel at the time. *Rodela-Aguilar*, 596 F.3d at 461.

The allegation that Johnson told the Department of Justice that Hall wanted a death sentence had no impact on the jury's verdict, as this was not in evidence. Consequently, Hall is unable to demonstrate a different outcome to support this claim. Hall fails to meet the "good cause" standard and this request should be denied.

Further, Johnson's refusal to sign a declaration or a letter in support of Hall's petition for clemency has absolutely no bearing on a motion to vacate under 28 U.S.C. § 2255 and should be disregarded. Johnson should not be compelled to participate in a deposition because of his legitimate refusal to sign a declaration or letter in support of Hall's petition for clemency.

      b.  Request to depose counsel Lynn Johnson. Hall provides the following:

> Lynn Johnson has refused to speak with § 2255 counsel. She would not agree to speak in person or by phone and she did not respond to a letter from Angie Elleman. Mr. Hall has alleged that Ms. Johnson was ineffective for failing to conduct an adequate life history investigation. She was married to counsel Darryl Johnson during his representation of Mr. Hall, then became his co-counsel upon the withdrawal of Stuart Huffman. As such, Ms. Johnson's testimony is crucial to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase.

Government's Response:

The Government opposes the request. Deposing Lynn Johnson is unnecessary because of her limited time in representing Hall during the early stages of the case. Lynn Johnson represented

Hall from July 20, 2011, until she was replaced by attorneys Frederick Duchardt, Jr. and Robert Lewis on August 21-22, 2012. After Johnson's representation of Hall ended, extensive litigation occurred from August 2012, up to the first day of trial on April 28, 2014, which included, inter alia, suppression motions and evidentiary hearings.

In evaluating counsel's conduct, the court should avoid "the distorting effects of hindsight," *Strickland*, 466 U.S. at 689; and "try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar*, 596 F.3d at 461. A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (quoting *Strickland*, 466 U.S. at 689). At the time of Johnson's representation, a psychiatric examination of Hall had been ordered, an expert investigator had been hired, and a motion to dismiss the superseding indictment was pending. Hall had also specifically expressed his desire for the death penalty, he directed Johnson to discuss this with the government, and Hall was not interested in a life investigation to mitigate his chances of receiving the death penalty. (Tr. 1529-1533.)

Considering the limited time frame of Johnson's representation, the clear record of events, and competent attorneys taking over the case that underwent extensive litigation almost two years prior to trial, Hall has failed to demonstrate that Lynn Johnson was ineffective for failing to conduct an adequate life history investigation, as the investigation was still ongoing and Hall desired the death penalty. Moreover, had the Court ruled in favor of dismissing the superseding indictment, there would have been no need to conduct further investigation. Hall has failed to demonstrate "good cause" and his request to depose Lynn Johnson should be denied.

        c.   Request to depose trial counsel Michael Walker. Hall provides the following:

        Michael Walker spoke with post-conviction counsel and then sent counsel

-8-

a draft declaration that was not consistent with counsel's recollection of the conversation. Counsel opted not to ask Mr. Walker to sign a declaration that was so inconsistent with counsel's own recollection. A deposition would allow clarification of the facts surrounding Mr. Walker's representation of Mr. Hall. Mr. Walker participated in planning the trial strategy, including decisions about investigation and experts, and was in court for at least parts of all phases of the trial. Mr. Hall has alleged that Mr. Walker was ineffective for failing to conduct an adequate life history investigation, among other serious errors in preparing for and litigating Mr. Hall's trial. As such, Mr. Walker's testimony is crucial to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase; Claim 2: Ineffective Assistance of Trial Counsel at the Culpability Phase; Claim 3: Ineffective Assistance of Trial Counsel During Jury Selection; Claim 4: Conflict of Interest.

Government's Response:

The Government opposes the request. Under *Bracy*, the proposed discovery must be based on "specific allegations" and Hall's request to depose trial counsel Michael Walker is too generalized and fails to specifically identify the information sought and generally indicates that it relates to Claims 1 through 4 of a motion consisting of almost 300 pages. Hall does not even cite the pages of his petition to which the claims may be referring to. Hall fails to explain the information sought, the facts he hopes to establish at deposition, the matters on which he seeks to question counsel Walker, or how any such facts are material to essential elements of the claims on which discovery is being sought. As Hall indicates, counsel Walker has already spoken to post-conviction counsel and offered a declaration; however, post-conviction counsel has refused his declaration. Hall has not provided a copy of that declaration to the Government. Since Hall has already spoken to counsel Walker and declined Walker's affidavit, Hall fails to show "good cause" and this request should be denied.

Should this Court determine an evidentiary hearing is required to resolve issues relating to Michael Walker's representation of Hall, post-conviction counsel will have an opportunity to

further examine Walker at that time.

d. Request to depose trial expert Dr. Robert Fucetola. Hall provides the following:

Dr. Robert Fucetola spoke with § 2255 counsel and stated that information he did not know about Mr. Hall, including brain abnormalities apparent in the MRI/PET and his experience of sexual abuse, would have changed his testimony. Dr. Fucetola then declined to sign a declaration. Mr. Hall has alleged that trial counsel was ineffective for failing to conduct an adequate life history investigation, failing to obtain brain imaging, and failing to provide experts, including Dr. Fucetola, with the information necessary to testify completely and accurately about Mr. Hall. As such, Dr. Fucetola's testimony is crucial to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase.

Government's Response:

The Government opposes the request. Hall has not indicated how Dr. Robert Fucetola's testimony would have changed the outcome of the case, nor does he reference the specific pages of his petition to which this relates to. Hall fails to identify the date and findings of said "MRI/PET," and Hall did not allege sexual abuse until his § 2255 petition, 10 years after conviction. As Hall concedes, he has already spoken to Dr. Robert Fucetola, yet Hall has provided no information regarding that discussion to the Government. Since Hall has already gathered the information needed from Dr. Robert Fucetola, a deposition is not needed.

Should the Court determine an evidentiary hearing is needed from Dr. Robert Fucetola relating to a specific claim alleged within Hall's § 2255 motion, Dr. Robert Fucetola may be called to testify at that time.

e. Request to depose government witness BOP psychologist Dr. Chad Brinkley. Hall provides the following:

Dr. Chad Brinkley did not return telephone calls from post-conviction counsel. Dr. Brinkley testified about his interactions with Mr. Hall on the day of the homicide after the homicide occurred. Although he was asked generally about his interactions with Mr. Hall on that day, he did not mention that he had spoken to Mr. Hall earlier in the day. BOP Psychiatrist

-10-

Dr. Patrick Gariety spoke to Mr. Hall prior to the homicide with Dr. Brinkley. Dr. Gariety was not called to testify. Dr. Gariety signed a declaration explaining that when he and Dr. Brinkley spoke to Mr. Hall prior to the homicide, Mr. Hall asked to speak with one of them privately. This is powerful mitigating evidence that Dr. Brinkley omitted from his testimony. And trial counsel did not interview him. As such, Dr. Brinkley's testimony is crucial to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase; Claim 5: *Brady* Violations and Claim 7: *Napue* Violation (Brinkley Testimony).

Government's Response:

The Government opposes the request. Dr. Chad Brinkley should not be deposed solely because Dr. Patrick Gariety provided a declaration stating that Hall asked to speak with one of them privately. Hall has not shown that merely requesting to speak to one of them is "powerful mitigating evidence" that changes the outcome of the case and since Dr. Gariety provided a declaration, this information is cumulative. Further, any context of an alleged conversation would be contained in Hall's medical records, which have been provided in voluntary discovery. No additional information is needed to conduct any evidentiary hearing on the claims related to this witness.

  f. Request to depose BOP psychologist Dr. Elizabeth Weiner. Hall provides the following:

Dr. Weiner declined to speak with post-conviction counsel. Discovery materials provided to trial counsel indicate that inmate David Breusch told Dr. Weiner that he'd submitted a written complaint that things were getting "out of hand" on 10-B in the days leading up to the homicide. The complaint itself has never been provided to defense counsel. Additionally, former Lieutenant Joe Buckmaster identified Dr. Weiner as someone who would regularly assign co-defendant Coonce to Unit 10-B where he was able to roam freely, rather than in a more restrictive lockdown unit, despite his criminal history, frequent write-ups for misconduct, and volatile behavior. As such, Dr. Weiner's testimony is crucial to, at minimum, Claim 5: *Brady* Violations.

-11-

The Government opposes the request. This request is too general and non-specific as to how Dr. Weiner's testimony relates to an alleged *Brady* violation, nor does the request cite to any specific page(s) of his petition. The request seeks a document containing a written complaint yet asks for a deposition. Hall has not produced, and the Government is unaware of, evidence that inmate David Breusch submitted a written complaint about things getting "out of hand" on 10-B days leading up to the homicide. Hall has failed to establish a *prima facie* claim under *Brady* by providing nothing more than a generalized statement of a possible withholding of exculpatory material with no specific evidence that supports his claim.

Further, this Court should give limited weight to Lieutenant Joe Buckmaster's allegations because he is not a doctor, he has no medical licensing, and he lacks foundation to give this form of testimony. Buckmaster is also being paid for delivering his opinion by the defendant. (See Civ. D.E. 70-10.)

g. Request to depose government witness Correctional Officer Robert Logsdon. Hall provides the following:

> Mr. Logsdon declined to speak to post-conviction counsel. He was on duty when the homicide occurred. Prior to the homicide, he had received disciplinary write-ups for inattention, but full information about his disciplinary history was not provided to trial counsel. Moreover, although trial counsel was generally aware of Mr. Logsdon having received disciplinary write-ups for inattention, and Mr. Logsdon testified, trial counsel failed to ask questions of Mr. Logsdon that would have elicited information about the role his inattention played in Mr. Castro-Rodriguez's death. Indeed, Mr. Logsdon's former supervisor, Lieutenant Joe Buckmaster, has said that Mr. Castro-Rodriguez's death was partly attributable to Mr. Logsdon. As such, Mr. Logsdon's testimony is crucial to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase and Claim 5: *Brady* Violations.

<u>Government's Response:</u>

The Government opposes the request. Hall seeks information protected from disclosure by the Privacy Act, 5 U.S.C. § 552a. Further, Hall conveys his knowledge of Logsdon's disciplinary write-ups for inattention and additional information would be cumulative. Hall also fails to state with specificity, nor cites to the pages of his petition, how this claim relates to ineffective assistance or a *Brady* violation.

Further, such information would not have changed the case's outcome. Logsdon told the jury that he felt responsible because the murder happened on his watch. (Tr. 781.) There was also testimony of how Hall and Coonce strategically planned the murder at a time when they knew the correctional officer would be distracted with other tasks. (Tr. 1360.) Hall fails to demonstrate "good cause" and his request should be denied.

       2.       <u>*Requests for Document Production*</u>

Hall's requests for documents are simply fishing expeditions for irrelevant information that is sensitive and personal. Hall provides no cause, let alone good cause, for the requested documents at this time. Were any of these documents to become relevant discovery for any witness or claim at a future evidentiary hearing, the parties and this Court can address the matter at that time.

Taking each request individually, the Government respectfully opposes these discovery requests for the following additional reasons:

> a. *BOP Employee Disciplinary files for relevant BOP employees, including those who testified at trial and those who were on duty at the time of the homicide.* Because trial counsel failed to present evidence about the role BOP mismanagement played in Mr. Castro-Rodriguez's death and because the government did not disclose complete information about BOP employees' disciplinary history, these documents are relevant to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase and Claim 5: *Brady* Violations.

-13-

The Government opposes the request. Hall's request for documents related to "BOP Employee Disciplinary files for relevant BOP employees" is overly broad, irrelevant, not sufficiently detailed, unduly burdensome, and a fishing expedition. Hall seeks information protected from disclosure by the Privacy Act, 5 U.S.C. § 552a. Hall fails to detail with specificity, nor does he cite to his petition, the claims to which this request relates to and generally states the records are needed to a claim of ineffective assistance and a *Brady* violation. Hall fails to demonstrate how the alleged records would change the outcome of the case. Hall fails to show "good cause" and this request should be denied.

> b. *Any documents related to Dr. Chad Brinkley's treatment of Mr. Hall.* Because Dr. Brinkley failed to tell the jury that Mr. Hall asked to speak with him or Dr. Gariety on the day of the homicide, these documents are relevant to, at minimum, Claim 5: *Brady* Violations and Claim 7: *Napue* Violation (Brinkley Testimony).

Government's Response:

All relevant documents, known to Government at the time of the criminal investigation, related to Dr. Brinkley's treatment of Hall were provided in discovery in the criminal case, and were available to Hall's counsel prior to the trial.

> c. *Any documents related to Dr. Chad Brinkley's conversations with government investigators or attorneys between the date of the homicide and his trial testimony.* The government has not provided any documentation of any interviews with Dr. Brinkley. In fact, the government did not provide documentation of interviews with either of the mental health professionals called to testify in the culpability phase (and these omissions are similar to a pattern in other cases where courts have determined that Mr. Peterson committed misconduct). When he testified, Dr. Brinkley failed to tell the jury that Mr. Hall asked to speak with him or Dr. Gariety on the day of the homicide. Dr. Gariety voluntarily spoke to § 2255 counsel and said that Mr. Hall asked to speak with him or Dr. Brinkley on the day of the homicide, but he was not called to testify. Documents related to conversations between

-14-

Dr. Brinkley and the government are relevant to, at minimum, Claim 5: *Brady* Violations and Claim 7: *Napue* Violation (Brinkley Testimony).

Government's Response:

The Government opposes the request. This request is too general and non-specific as to how the government's conversation with Dr. Brinkley relates to an alleged *Brady* or *Napue* violation, nor does the request cite to any specific page(s) of his petition. Hall has not shown that merely requesting to speak to Dr. Brinkley changes the outcome of the case and since Dr. Gariety provided a declaration, this information is cumulative. Further, any context of an alleged conversation between Hall and Dr. Brinkley occurring prior to the murder would be contained in Hall's medical records, which have been provided in discovery.

> d. *Any documents related to a written request to staff (aka "cop-out") by David Bruesch about things being "out of hand" on Unit 10-B.* Because the government did not disclose the cop-out to trial counsel, these documents are relevant to, at minimum, Claim 5: *Brady* Violations.

Government's Response:

The Government currently is not aware of documents responsive to this request.

> e. *Any records related to Darryl Johnson's presentation to the Department of Justice.* Because Mr. Johnson told the DOJ that Mr. Hall wanted the death penalty rather than presenting a mitigation case, these documents are relevant to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase.

Government's Response:

The Government opposes the request. As reiterated by the Eighth Circuit, Hall sent two letters to the government before trial. "In the first, [Hall] expressed his desire to be executed and offered to 'enter a ple[a] of guilty' if the prosecutor 'could guarantee' that he received a death sentence. He also explained that '[t]he only thing that [would] stop [him] from killing again [was] to put [him] to death.' In the second, which was delivered both to the prosecutor and to his own attorney, he explained in detail why he thought he was eligible for the death penalty, directed his

attorney to work toward a death sentence, and requested a guilty plea 'as long as' the prosecutor would recommend one." *United States v. Hall*, 945 F.3d 1035, 1044–45 (8th Cir. 2019).

Given that Hall sent two letters indicating he wanted the death penalty, any records relating to a purported presentation by Darryl Johnson telling DOJ that Hall wanted the death penalty would be cumulative.

> f. *Any DOJ Capital Case Section memos and training materials about capital jury selection.* Because the government struck a disproportionate number of female potential jurors and counsel made no objection, these documents are relevant to, at minimum, Claim 3: Ineffective Assistance of Counsel During Jury Selection.

Government's Response:

The Government opposes the request. This request is vague, indeterminate, overbroad, unduly burdensome, and completely fails to meet the requirements of "good cause." This is another fishing expedition, pure and simple. Moreover, policy directives and internal guidance are "not intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States." Justice Manual § 9-27.150; *see also United States v. Caceres*, 440 U.S. 741 (1979). The requested information seeks protected attorney work product and litigation strategies. *See Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for United States Att'ys*, 844 F.3d 246, 255 (D.C. Cir. 2016) (holding that "an internal manual containing litigation strategies" for prosecutors was protected attorney work product). This request is also overly broad and should be denied.

> g. *Any records related to allegations of professional misconduct by attorneys working in the Capital Case Section at the time of Mr. Hall's trial, including but not limited to James D. Peterson.* These documents are relevant to, at minimum, Claim 5: *Brady* Violations; Claim 6: *Napue* Violation (Bezy Testimony); and Claim 7: *Napue* Violation (Brinkley Testimony).

-16-

<u>Government's Response:</u>

The Government opposes the request. The request for "any records related allegation of professional misconduct by attorneys working in the Capital Case Section at the time of Mr. Hall's trial" seeks information protected from disclosure by the Privacy Act, 5 U.S.C. § 552a. Further, the request is overly broad, not tailored to a specific claim nor cites to the pages of his petition, and fails to provide any explanation of how this information changes the trial's outcome. Rule 6 does not authorize fishing expeditions. Notwithstanding the objection, AUSA James Peterson was the only attorney in the Capital Case Section who entered an appearance on Hall's case, to which no records of professional misconduct exist.

3.    *Requests for Third-Party Subpoenas*

Hall requests the following:

> Subpoenas to Vermont government agencies that may have information about investigations into Shaker Mountain School or Jerome (Jerry) Mintz. Because trial counsel failed to learn that Mr. Mintz sexually abused Mr. Hall and present this mitigating evidence to the jury, these documents are relevant to, at minimum, Claim 1: Ineffective Assistance of Trial Counsel at the Penalty Phase.

<u>Government's Response:</u>

The Government opposes the request. The requested subpoena for "information about investigations into Shaker Mountain School or Jerome (Jerry Mintz)" is not sufficiently limited or particularized as to subject or timeframe and seeks a general fishing expedition related to any and all investigations to a non-party litigant. Further, as conceded in Hall's § 2255 motion, Hall never mentioned any sexual abuse until his present motion, 10 years after conviction. Hall also has failed to demonstrate a different outcome, as the jury was well aware that Hall was housed in a federal medical facility and within a unit that monitored and housed those suffering from mental illnesses,

-17-

as this fact was mentioned several times throughout trial. The jury was also aware that Hall suffered from mental illnesses, including depressive disorder, psychotic disorder, antisocial personality disorder, Axis III, and Crohn's disease. (Tr. 1136.) Hall was also known as one to make up stories, tell tall tales, and lied about his sister Michelle being sexually assaulted by their adoptive father. (Tr. 4351, 4389-4390, 4401, 4434-4435.) Hall's written letter also details that he "planned, calculated and executed the homicide with a clear mind and with clear thinking." (Tr. 1533.) Hall's request for a general fishing expedition should be denied.

### III. Conclusion

Accordingly, for the reasons set forth above, the Government respectfully requests that this Court deny Hall's motion for discovery. (Civ. D.E. 77.)

Respectfully submitted,

Teresa A. Moore
United States Attorney

By      */s/ Randall D. Eggert*
RANDALL D. EGGERT
Assistant United States Attorney
901 St. Louis, Suite 500
Springfield, Missouri 65806
Telephone: (417) 831-4406

*Attorneys for Plaintiff*

-18-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on August 16, 2024, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

/s/ Randall D. Eggert
Randall D. Eggert
Assistant United States Attorney

-19-